Filed 9/17/13  In re Robert M. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ROBERT M., a Person Coming Under the Juvenile Court Law. | B244324 (Los Angeles County Super. Ct. No. VJ42422) |
| THE PEOPLE, Plaintiff and Respondent, v. ROBERT M., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Fumiko Hachiya Wasserman, Judge.  Affirmed in part and reversed in part.

Lynette Gladd Moore, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

On September 11, 2012, the Los Angeles County District Attorney's Office filed an amended petition pursuant to Welfare and Institutions Code section 602, alleging that 15-year-old appellant Robert M. had committed three crimes: Vandalism by defacing railroad boxcars with graffiti causing over $400 in damage, a felony (Pen. Code, § 594, subd. (a)) (count 1); resisting a peace officer, a misdemeanor (Pen. Code, § 148, subd. (a)(1) (count 2); and vandalism by defacing walls with graffiti causing under $400 in damage, a misdemeanor (Pen. Code, § 595) (count 3). Following an adjudication hearing, the juvenile court sustained the amended petition and declared appellant a ward of the court. The court declared the offenses to be misdemeanors and placed appellant at home on probation.

Appellant contends the juvenile court committed prejudicial error by admitting hearsay and testimonial statements made to police and by allowing the graffiti expert to base his opinion on these statements. We reverse the order sustaining the petition as to count 1.

**FACTS**

On February 25, 2012, at about 8:35 p.m., California Highway Patrol Officer Dylan Youngblood saw four minors spray painting the walls of a building in a railroad yard. At one point, appellant was lifted up so he could reach higher on the building. The minors walked away and Officer Youngblood ordered them to stop and get on the ground. They ran away, but three of them eventually stopped. Appellant kept running and was caught by California Highway Patrol Sergeant Tannon Brown, who had responded to the scene. Appellant had "a lot" of paint on his hands—in white, black and blue—as did the other three minors. The spray paint on the walls was wet to the touch. Spray paint on nearby boxcars was dry, and it was unknown when they had been tagged.[1]

Officer Youngblood interviewed all four minors at the police station. One of the minors said his moniker was "Aker" and that he was a member of the "TC" "tagging

---

[1] The amended petition alleged an offense date between August 1, 2011, and February 25, 2012.

crew."[2] He admitted putting his moniker on the walls and said he had put his moniker on the boxcars "a few months back or a couple weeks back." Another minor said his moniker was "Ends" and he referred to the "tagging crew" of "GTSC." He admitted painting the walls with his moniker and, "a few weeks back," the boxcars. A third minor said his moniker was "Vour," and he admitted painting the walls and, a few weeks back, the boxcars. None of the minors stated that they had vandalized the boxcars with appellant. Appellant admitted nothing.

Sergeant Brown specialized in graffiti and "taggers." He was the graffiti coordinator out of the Santa Fe Springs area, and had been keeping track of the tagging crews and monikers in the area. He has been involved in more than 400 investigations of tagging crews. He believed the graffiti in this case was tagger, rather than gang, graffiti. He explained that taggers tend to associate with a crew, and when they commit vandalism by way of graffiti, they typically write the name of their crew as well as their own name. Sergeant Brown was familiar with the moniker "Robs" and the tagging crew "KOW," which associated with the "TC" tagging crew. A member of a tagging crew would not use multiple monikers, because the purpose of graffiti is to gain notoriety.

Sergeant Brown took photographs of the walls and boxcars. While all three monikers of "Aker," "Ends," and "Vour" appeared on both the walls and the boxcars, "KOW" and "Robs," as well as other monikers, only appeared on the boxcars. In several photographs, "Robs" was shown painted on the boxcars alongside the other monikers. Sergeant Brown testified that it is not uncommon for tagging crews to work together, since members of different crews are often friends. It is also not uncommon for one person to paint the name of another tagger, and Sergeant Brown believed that had been the case in some of the photographs he had taken of the boxcars. He also testified that a tagging crew might paint the name of another crew and all of its members to show that crew "respect and notoriety and fame."

---

[2] Officer Youngblood read this minor his rights under *Miranda v. Arizona* (1966) 384 U.S. 436 before questioning him. The record is silent as to whether the other minors were also *Mirandized*.

3

Sergeant Brown was asked the following: "Given all this information, everything that you've seen, even in the field, all these photographs and the interviews and Officer Youngblood's testimony, and other information you may possess, as to the owner of the moniker 'Robs' do you have an opinion as to the identity of that person?" Over defense objection, Sergeant Brown opined that "Robs" was the moniker used by appellant. He stated that his opinion was based on the following: "It is the totality of the circumstances. The newness or freshness of all of the graffiti in this area committed by the 4 suspects, the 'Vour,' the 'Aker,' the 'Robs' and the 'Ends' that are listed in the photographs, the statement obtained from all of the individuals involved, the fresh paint on their fingers and the additional consequences of Robert, the first three letters [are] 'R-O-B.'"

## DISCUSSION

Appellant's challenge on appeal relates only to count 1 (vandalism of the railroad boxcars at some point between August 1, 2011, and February 25, 2012).[3] He contends the juvenile court committed prejudicial error by (1) admitting the hearsay and testimonial statements of the other three minors who were arrested, and (2) allowing Sergeant Brown to base his expert opinion that appellant was "Robs" on these statements.

### I. The Minors' Statements to Police Were Inadmissible

Appellant argues that the statements of the other three minors were inadmissible hearsay and violated his rights under the confrontation clause of the Sixth Amendment. The People do not address the first argument and dismiss the second argument in a single sentence.

#### A. Inadmissible Hearsay

When defense counsel objected that the minors' statements were inadmissible as hearsay, the prosecutor replied that they were admissible as a declaration against penal interest. The prosecutor later stated that he "believe[d] those witnesses would be

---

[3] Appellant submitted below to count 2 (resisting a peace officer) and count 3 (vandalism involving the walls).

4

unavailable because they have an appellate right for 30 days and they all just admitted there was no waiver by defense counsel or no waiver for a continuance."

Evidence Code section 1230 provides: "Evidence of a statement by a declarant having sufficient knowledge of the subject is not made inadmissible by the hearsay rule if the declarant is unavailable as a witness and the statement, when made, was so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability, . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." Under Evidence Code section 240, subdivision (a)(5), a witness is unavailable if he or she is "[a]bsent from the hearing and the proponent of his or her statement has exercised reasonable diligence but has been unable to procure his or her attendance by the court's process."

We do not find the prosecutor's "belief" that the minors were unavailable because they had an "appellate right," without any further explanation, to constitute the exercise of reasonable diligence in trying to procure their attendance. Accordingly, the statements to police were not admissible as an exception to the hearsay rule.

### B. Testimonial Evidence

We also agree with appellant that admission of the minors' statements to police violated his constitutional rights under the confrontation clause because the statements were testimonial evidence and appellant had no prior opportunity for cross-examination.

In *Crawford v. Washington* (2004) 541 U.S. 36, the United States Supreme Court held that the Sixth Amendment barred the admission of testimonial statements of a witness who did not appear at trial, unless the witness was unavailable to testify and the defendant had had a prior opportunity for cross-examination. (*Id*. at pp. 53–54.) "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." (*Id*. at pp. 68–69.) "*Crawford* declined to define the term 'testimonial' [citation], but gave examples of testimonial statements. *Crawford* listed as testimonial: (1) plea allocutions showing the existence of a conspiracy; (2) grand jury testimony; (3) prior trial testimony; (4) ex parte testimony at a preliminary hearing; and (5) statements taken by

5

police officers in the course of interrogations." (*People v. Cervantes* (2004) 118 Cal.App.4th 162, 172.) *Crawford* also identified as testimonial "'material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially,'. . . [and] 'extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions.'" (*Crawford v. Washington, supra,* 541 U.S. at pp. 51–52.) In other words, "'statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" (*Id*. at p. 52.)

In *People v. Romero* (2008) 44 Cal.4th 386, 422, the California Supreme Court stated that the "critical consideration" in determining whether a statement is testimonial "is the primary purpose of the police in eliciting the statements." (*Id*. at p. 422.) "Statements are testimonial if the primary purpose was to produce evidence for possible use at a criminal trial; they are nontestimonial if the primary purpose is to deal with a contemporaneous emergency such as assessing the situation, dealing with threats, or apprehending a perpetrator." (*Ibid*.)

It is clear that the minors' statements to the police were testimonial in nature. The statements were given in response to police interrogation at the police station, and at least one of the minors had been *Mirandized* before making any statements. The crimes were completed, the minors had been arrested, and there were no exigent circumstances. Because appellant had no prior opportunity to confront and cross-examine the declarants, the admission of their statements violated appellant's constitutional rights.

### C. *No Harmless Error*

An error in the admission of evidence that violates the defendant's right to confront and cross-examine witnesses against him compels reversal unless it can be determined that the error was harmless beyond a reasonable doubt. (*People v. Cage* (2007) 40 Cal.4th 965, 991–992, citing *Chapman v. California* (1967) 386 U.S. 18.) Here, the error was not harmless beyond a reasonable doubt because there was no other evidence linking appellant to the graffiti on the boxcars. Neither of the tags "Robs" or

6

"KOW" appeared on the walls appellant was seen spray painting. No one saw appellant tagging the boxcars. It was unknown when the boxcars were tagged. And according to Sergeant Brown, it is common for taggers to spray paint the moniker and crew names of other taggers. Under these circumstances, the admission of the minors' statements to police cannot be deemed harmless beyond a reasonable doubt. Accordingly, appellant did not receive a fair trial on count 1.

## II. The Expert's Opinion Testimony

Based on our above finding we may end our analysis here, and we need not reach the merits of appellant's additional argument that the expert's opinion testimony that appellant used the moniker "Robs" should have been excluded as "valueless" evidence because it was based on the minors' inadmissible statements.

We recognize that an expert's opinion may be based on information that is itself inadmissible hearsay, so long as it is reliable and of the type of information reasonably relied upon by experts on the subject. (*People v. Gardeley* (1996) 14 Cal.4th 605, 618.)

But even assuming, without deciding, that Sergeant Brown could properly rely on the minors' inadmissible statements in forming his opinion that appellant used "Robs," this opinion testimony was insufficient to support a finding that appellant was guilty beyond a reasonable doubt of tagging the boxcars. This is so because Sergeant Brown testified that it was common for taggers to spray paint the names of other taggers as a sign of respect. Thus, even if the trier of fact could rely on Sergeant Brown's opinion testimony, this testimony did not connect the dots, i.e., it did not establish that appellant *himself* sprayed "Robs" on the boxcars.

7

## DISPOSITION

The juvenile court's order finding count 1 of the amended petition to be true is reversed. In all other respects, the order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
ASHMANN-GERST


We concur:


_____, J.
CHAVEZ


_____, J.*
FERNS

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


8